# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 13, 2014

## STATE OF TENNESSEE v. KAYLA CLARK

**Appeal from the Circuit Court for Maury County**
**No. 21535      Stella Hargrove, Judge**

**No. M2013-02325-CCA-R3-CD   Filed 06/06/2014**

Appellant, Kayla Clark, was convicted of two counts of sale of a Schedule III controlled substance and was sentenced as a Range I, standard offender to concurrent sentences of four years each, to be served in the custody of the Tennessee Department of Correction. In this appeal, she challenges both the lengths of her sentences and the manner of service. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Michael D. Cox, Columbia, Tennessee, for the appellant, Kayla Clark.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Senior Counsel; T. Michel Bottoms, District Attorney General; and Brent Cooper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Procedural History

Appellant was indicted for two counts of sale of Lortab, a Schedule III controlled substance, in a drug-free school zone, Class C felonies. Following a jury trial,[1] appellant

---

[1] The appellate record does not contain a transcript of the trial. In her brief, appellant states that the "facts relevant for review were developed during the sentencing hearing." Therefore, we glean from the absence of the trial transcript that appellant does not contest the jury's verdicts. Moreover, because of the

(continued...)

was found guilty of two counts of sale of a Schedule III controlled substance without the drug-free school zone enhancement, Class D felonies. She was sentenced as a Range I, standard offender with a potential sentence exposure of two to four years for each conviction.

## II. Sentencing Hearing

At the sentencing hearing, appellant relied upon the mitigating factors that her conduct neither caused nor threatened serious bodily injury, that she acted under strong provocation, that substantial grounds existed tending to excuse or justify her criminal conduct, and that she had made significant progress in a residential rehabilitation program. *See* Tenn. Code Ann. § 40-35-113(1), (2), (3), (13). The State argued that appellant had a previous history of criminal convictions or behavior in excess of those necessary to establish the range of punishment, that appellant previously had failed to comply with the conditions of a sentence involving release into the community, and that appellant was on probation in Lawrence County at the time of the offenses. *See* Tenn. Code Ann. § 40-35-114(1), (8), (13)(C). The State emphasized that had the proper notice been filed pursuant to Tennessee Code Annotated section 40-35-202, appellant could have been sentenced as a Range II offender based on her criminal history. The State also noted that she had previous suspended sentences partially revoked.

The State also advocated for consecutive sentences based on appellant's status as a professional criminal who devoted her life to criminal acts as a major source of livelihood and because she was an offender whose record of criminal activity was extensive. *See* Tenn. Code Ann. § 40-35-115(1), (2).

The State's first witness was Christie Dickey, who prepared appellant's presentence report. Ms. Dickey read aloud appellant's statement, in which she essentially asserted that she had changed and was "a new person." The presentence report stated that appellant had earned a GED at an adult education center and that she had no mental or physical health

---

[1](...continued)
lack of the trial transcript, the State argues that appellant has waived review of her sentencing issues. *See* *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). We conclude that following our supreme court's opinion in *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012), we should employ a case-by-case analysis of whether the trial transcript is necessary for "meaningful review" of sentencing determinations. *Id.* (holding that when a transcript of a guilty plea submission hearing is not contained in the record, reviewing courts "should determine on a case-by-case basis whether the record is sufficient for a meaningful review"). "It is the duty of an appellant under Tennessee Rule of Appellate Procedure 24(b) *only* to prepare a record as necessary to convey the issues on appeal[,]" *id.*, and appellant does not challenge her jury verdicts of guilty. (emphasis added). We conclude that the record developed at the sentencing hearing is sufficient for appellate review in this case.

concerns. She had heavily consumed alcohol in the past but had been sober since October 2012, and she used marijuana on a weekly basis in 2007 and 2009 to "self-medicate" after the loss of her father and a nephew. Appellant had two children but was not married; her older son lived with her step-mother, and her younger son lived with his father while appellant was in the rehabilitation program. Appellant's previous employment included cleaning houses, landscaping, and working at a dry cleaning company.

Ms. Dickey reported appellant's criminal history as follows: driving under the influence, 2012; sale of a Schedule VI controlled substance, 2011; attempted child abuse, 2009; two counts of sale of a Schedule VI controlled substance, 2009; sale of a Schedule VI controlled substance, 2008; simple possession, 2007; and possession of a Schedule II controlled substance, 2003. In May 2012, Ms. Dickey obtained a probation violation warrant on the grounds that appellant had been arrested and charged with driving under the influence and various traffic citations. The warrant was subsequently amended to include the two arrests for sale of a controlled substance. Appellant's probation was revoked and reinstated after serving sixty days' incarceration. Ms. Dickey denied that appellant ever accepted responsibility for the things she had done.

Appellant then called Jennifer Tater, appellant's probation officer. Ms. Tater confirmed that appellant had only been subject to one probation revocation proceeding, which occurred after her arrests for driving under the influence and the two counts in the instant case. Ms. Tater explained that since appellant's stay in the residential treatment program, she saw "100 percent" improvement in appellant. Ms. Tater said, "[S]he has changed . . . . She's totally different."

On cross-examination, the State highlighted appellant's sparse employment history and sporadic payment toward her court costs and fines. Ms. Tater then stated that with regard to the verdicts in the instant case, appellant said that God had placed her in a position where "she would do the time if she needed to do the time . . . [t]hat she was okay . . . , if that's what she had to do." Ms. Tater further commented, "[S]he has completely changed . . . . [B]efore, when she would ever get in trouble, she was a basket case[] and would either disappear or something would happen, and it would set her off the deep end . . . . But she was really calm with it and just had made peace with it." She said that appellant took "full responsibility" and was willing to "take whatever punishment" was given to her. Ms. Tater was "impressed" with appellant's change in attitude "because it's not the way that she had started probation."

Appellant also called Betty Clot, the administrator/co-founder of the Discipleship House, the residential treatment program in which appellant had been enrolled. She explained that the program was not certified as a rehabilitation program but that it had been

"recognized" as such. Rather, it was a home for women as they were released from incarceration. She explained the programs that they offered and noted that the residents were subject to "24/7 supervision." They also administered a drug test weekly.

Ms. Clot testified that appellant had been in the program for over eight months. During that time, appellant never tested positive for drugs or alcohol. Ms. Clot characterized appellant as "co-dependent" when she first began the program but opined that appellant was learning tools to assist her with that behavior. She did not witness any "compulsive" behavior with regard to addictive substances. As part of the program, they prohibit residents from seeking employment during the first month so that they can get the "moral strength" they need to resist and fend off temptations. However, after the first month, appellant found employment at a dry cleaner and then performed yard work and house cleaning services. The program charges thirty-five percent of a resident's earnings.

On cross-examination, Ms. Clot emphasized that she was "absolutely positive" that appellant would be able to resist temptations from that point forward. She also stated that while appellant was praying that the court would have mercy based on her life changes, she nonetheless was willing to accept whatever punishment the court meted out.

Appellant testified on her own behalf. She accepted responsibility for her conduct in the instant cases, although intimating that she buckled under pressure from the confidential informant. Appellant recounted her employment history and odd jobs she had completed. She also confirmed that her children were staying with their respective guardians on a temporary basis and that her parental rights had not been terminated. Appellant also claimed that the majority of her legal problems were the result of her wanting to please people.

III. Analysis

In her brief, appellant argues that the length of her sentences are excessive and that the trial court erred in denying her request for alternative sentences.

A. Length of Sentences

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his

own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id*. § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

At the close of the sentencing hearing, the trial court, after considering the relevant statutory principles and purposes of sentencing, announced its findings on the record:

[Appellant] is only 28; however, her criminal history starts at 18, here in the Circuit Court. So for 10 years, off and on, mainly on, she's been in the Criminal Justice System.

And over those 10 years, she has four felony convictions, three of which involve drugs. They're all marijuana sales. And then the other one was a combined charge it looks like, and a conviction for having that child with her during one of her sales. And she pled to a reduce[d] charge of Attempted Child Neglect or Abuse.

She also has six prior misdemeanors, two of which are drugs, vandalism, and some traffic violations.

The DUI is not a prior conviction, necessarily. It is part of her criminal history.

And this Court does note that and already put in the record when this offense occurred, February 26, 2012. I'm talking about the DUI.

She had already sold the Lortab in April of 2011; however, she wasn't arrested and bonded out until May the 9th, 2012.

And so she would have bonded out when she pled to the DUI later in the year of 2012, which would have been October. So she bonded out in May for us, these charges, and then she pled to the DUI in October of 2012.

She has been granted the privilege of probation many times and this Court counted seven, which includes the DUI.

She has faced one revocation and served a partial revocation of only 60 days out of Lawrence County convictions.

She truly and obviously was on probation for her marijuana drug convictions when she sold the Lortab. There's no doubt about that, and so I won't go through the timeframe.

The trial court then reviewed information contained in the presentence report.

The trial court applied enhancement factor one, that appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the

appropriate range; factor eight, that appellant had failed to comply with the conditions of a sentence involving release into the community; and factor thirteen, subsection (c), that appellant was on probation in Lawrence County when she committed the instant offenses. *See* Tenn. Code Ann. § 40-35-114(1), (8), (13)(C). The court also gave "some consideration" to mitigating factor one, that her conduct neither caused nor threatened serious bodily injury. *See id.* § 40-35-113(1). The trial court declined to apply factors two or three, that appellant acted under strong provocation and that substantial grounds existed tending to excuse or justify her criminal conduct. *See id.* § 40-35-113(2), (3). The trial court "considered" information submitted in support of the "catch-all" provision but found it "difficult . . . to reconcile" the inconsistencies between appellant's trial testimony and her testimony at the sentencing hearing. *See id.* § 40-35-113(13).

The trial court then fixed appellant's two sentences at four years each. Although the trial court found some support for imposition of consecutive sentences, it ultimately ordered concurrent sentence alignment of the sentences. *See id.* § 40-35-115.

We cannot conclude that the trial court abused its discretion in this regard. The record is replete with evidence supporting the trial court's determination that appellant's sentences should be set at the maximum within the range. Her extensive criminal history, her repeated convictions for selling controlled substances, and her failed attempt at probation, albeit only one, provide ample grounds for imposition of the maximum sentences. Because the trial court followed the proper procedure and imposed within-range sentences, we accord the decision with a presumption of reasonableness and conclude that the trial court did not abuse its discretion.

### B. Denial of Alternative Sentencing

We employ the *Bise* abuse of discretion standard accompanied by a presumption of reasonableness to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

We begin with the proposition that a defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a). An especially mitigated or standard offender convicted of a Class C, D, or E felony is considered to be a favorable candidate for alternative sentencing in absence of evidence to the contrary. *See* Tenn. Code Ann. § 40-35-102(6). "A court shall consider, but is not bound by, this advisory sentencing guideline." *Id.* The trial court must automatically consider probation as an alternative sentence for eligible defendants, but the defendant bears "the burden of establishing suitability for probation." Tenn. Code Ann. § 40-35-303(b). This burden includes demonstrating that probation will "'subserve the ends of justice and the best

interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A trial court should base its decision regarding any sentence involving confinement on the following considerations:

> (A)    Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B)    Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C)    Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Furthermore, the trial court should examine the defendant's potential for rehabilitation or lack thereof when determining whether an alternative sentence is appropriate. *Id.* § 40-35-103(5).

In denying an alternative sentence, the trial court concluded that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to appellant, that a sentence of full probation would unduly depreciate the seriousness of the offenses, and that confinement was necessary to provide an effective deterrent to those likely to commit similar offenses. *See id.* § 40-35-103(1). It also determined, based on the growing number of drug offenses involving prescription pills in the jurisdiction, that the interests of society would be protected from possible future criminal conduct by appellant. *See id.* As such, the trial court ordered that appellant serve her effective four-year sentence in confinement.

Appellant submits that the trial court abused its discretion in concluding that less restrictive measures had frequently or recently been applied unsuccessfully to her, citing the fact that she had incurred *only one* probation revocation during the course of her ten-year criminal record. We find this "argument . . . unavailing, as accepting [it] would require this court to engage in the kind of micro-management of the trial court's sentencing decisions that is plainly no longer permissible under *Bise* and *Caudle*—if indeed it ever was." *State v. Jerry Kirkpatrick*, No. E2011-01091-CCA-R3-CD, 2013 WL 105896, at *11 (Tenn. Crim. App. Jan. 9, 2013). We also note that appellant, who should have rightfully been sentenced as a

Range II offender, had been afforded previous suspended sentences. Although she violated the terms of only one such sentence, we conclude that her prior criminal history and violation do not support a further reprieve from incarceration. Appellant has failed to carry her burden of demonstrating to the trial court or this court that granting her probation would serve the ends of justice and serve the best interests of both the public and her. The trial court did not abuse its discretion in ordering appellant to serve her sentences in confinement.

## CONCLUSION

Based on the record, the briefs of the parties, and the applicable legal authorities, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE